UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK SCOTT BAKER, <u>et</u> <u>al.</u>,    )
                                            )
            Plaintiffs,                     )
                                            )
    v.                                      )
                                            )   Civil Action No. 03-749 (GK)
GREAT SOCIALIST PEOPLE'S                    )
LIBYAN ARAB JAMAHIRIYA,                     )
<u>et</u> <u>al.</u>,                       )
                                            )
            Defendants.                     )
_____)

### MEMORANDUM OPINION

Plaintiffs[1] bring this suit against various foreign Defendants[2] under the state-sponsored terrorism exception, 28 U.S.C. § 1605(a)(7) (2006), to the Foreign Sovereign Immunities Act of 1976 ("FSIA"). Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended at 28 U.S.C. §§ 1330, 1332(a), 1391(f), 1601-1611 (2006)).

---

[1] Plaintiffs are EgyptAir Flight 648 passenger Patrick Scott Baker; Jerry Baker; Lois Baker; Craig Baker; Craig Baker, as the Personal Representative for the Estate of David Baker; Stacie Baker; Hetty E. Peterson, as Executrix and Successor in Interest of the Estate of EgyptAir Flight 648 passenger Scarlett M. Rogencamp; Patricia A. Henry, as Guardian of Hetty E. Peterson; Valerie Peterson, as Executor of the Estate of Vernon W. Peterson; Patricia A. Henry; Katharine D. Doris; Paul G. Peterson; Michelle Y. Holbrook; EgyptAir Flight 648 passenger Jackie Nink Pflug; Jim Olsen; Tanner Olsen; Rylma Nink; Eugene Nink; Gloria Nink; Mary Nink; and Scott Pflug.

[2] Defendants are the Great Socialist People's Libyan Arab Jamahiriya ("Libya"); Libyan Internal Security ("LISO"); Libyan External Security ("LESO"); Muammar al-Qadhafi, de facto leader of Libya; Major Abdallah al-Sanusi, Chief of LISO; Ibrahaim al-Bishari, Chief of LESO; the Syrian Arab Republic ("Syria"); Syrian Air Force Intelligence; and General Muhammed al-Khuli, Chief of Syrian Air Force Intelligence.

Plaintiffs' claims stem from incidents that occurred on EgyptAir Flight 648, which was hijacked by the Abu Nidal Organization ("ANO") on November 23, 1985.

This matter is now before the Court on a Motion to Dismiss filed by Libya, LISO, LESO, Muammar al-Qadhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari.[3]   Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons stated below, the Libyan Defendants' Motion to Dismiss is **denied**.

## I.   BACKGROUND

### A.   Factual History[4]

On November 23, 1985, three ANO terrorists boarded EgyptAir Flight 648 in Athens, Greece "for the purpose of accomplishing the mission of hijacking the plane."  Pls.' Am. Compl. at ¶ 51.  Three

---

[3] These Defendants are collectively referred to herein as the "Libyan Defendants."  Muammar al-Qadhafi, Major Abdallah al-Sanusi, and Ibrahaim al-Bishari are collectively referred to herein as the "individual Libyan Defendants."

Defendants Syria, Syrian Air Force Intelligence, and General Muhammed al-Khuli, Chief of Syrian Air Force Intelligence, are collectively referred to herein as the "Syrian Defendants."

The Syrian Defendants have not responded to Plaintiffs' Complaints.

[4] For purposes of ruling on a motion to dismiss, the factual allegations in the complaint must be presumed to be true and liberally construed in favor of the plaintiff.  Abigail Alliance v. Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006).  Therefore, the facts set forth herein are taken from Plaintiffs' Amended Complaint.

-2-

Americans, Plaintiff Patrick Scott Baker, Plaintiff Jackie Nink Pflug, and decedent Scarlett M. Rogencamp, were on board the plane. Id. at ¶ 54. Minutes into the flight, the terrorists hijacked the plane "us[ing] weapons provided by Libyan government agents which had been transported in Libyan diplomatic pouch(es)." Id. at ¶ 55. The hijackers then instructed the passengers to surrender their passports. Id. at ¶ 56.

A shootout subsequently ensued between an Egyptian sky marshall and one of the hijackers. Id. at ¶ 57. The shootout resulted in the death of the hijacker, the wounding of the sky marshall and two stewardesses, and the piercing of the plane's fuselage. Id. The plane was subsequently diverted to Malta. Id. Malta International Airport's tower initially refused to allow the plane to land, but relented after the pilot advised that the plane was in danger of running out of fuel and crashing into the sea. Id. at ¶ 58. The hijackers, holding a gun to the pilots head, forced him to land the plane on an unlit runway. Id. at ¶ 59. The tower ordered the pilot to taxi to a remote parking area; four police buses then blocked both ends of the runway. Id. at ¶ 60.

The Maltese airport authorities refused the hijackers' demands to refuel the plane. Id. at ¶¶ 61-62. In response, the hijackers threatened to shoot one passenger every fifteen minutes until the airport personnel acquiesced. Id. at ¶ 63. Meanwhile, at the

-3-

pilot's request, the hijackers agreed to release eleven women: seven Filipinos and four Egyptians.  Id. at ¶ 64.

The hijackers then asked two Israeli women on board the plane to identify themselves.  Id. at ¶ 65.  In response, Tamar Artzi, one of the Israeli women on board, stepped forward thinking that she too would be released.  She was, however, shot in the head thrown from the plane and onto the tarmac.[5]  Id. at ¶ 66.  The hijackers identified Nitzan Mendelson, the other Israeli woman on board the plane, from her passport photo.  They tied her hands and dragged her to the open doorway of the plane where they shot her in the head and threw her from the plane.[6]  Id. at ¶ 69.

After shooting Ms. Artzi and Ms. Mendelson, the highjackers turned their attentions to the flight's three American passengers. One by one, the terrorists brought the American passengers to the front of the plane, shot each of them in the head, and threw them from the plane.  Id. at ¶ 72.

Patrick Scott Baker was the first American shot and thrown from the plane.  While he was injured and lying on the tarmac, the hijackers apparently realized Mr. Baker was not dead, carried him back up the stairs, and threw him from the aircraft a second time. After being thrown from the plane the second time, Mr. Baker pretended he was dead and waited for the hijackers to return to the

---

[5] Ms. Artzi survived her injuries.  Id. at ¶ 70.

[6] Ms. Mendelson never regained consciousness.   She was pronounced dead three days later.  Id. at ¶ 70.

plane.[7]  Id. at ¶ 73.  Likewise, Scarlett Rogencamp and Jackie Nink Pflug were shot in the head and thrown from the aircraft.[8] Plaintiffs claim that "[e]ach time the leader of the terrorists shot a passenger, he danced and sang and made jokes to his comrades."  Id. at ¶ 78.

Twenty-four hours after the hijacking began, Egyptian troops stormed the plane.  Id. at ¶ 79.  Fifty-seven additional passengers died during the rescue attempt.  Id. at ¶ 80.

According to Plaintiffs, the ANO had received "considerable support" from Libya and Syria.  Id. at ¶ 85.  Specifically, Plaintiffs claim that Libya's material support of ANO included (but was not limited to) provision of the following:

> (a) [F]unds, (b) facilities, (c) airline tickets, (d) free and unobstructed entry into, safe haven in, and exit from Libya by members of ANO, (e) terrorist training in Libyan camps, (f) use of the privilege of Libya's "diplomatic pouch," (g) use of Libya's diplomatic freight privileges, (h) official documents of all kinds, and (i) actual operational assistance in pre-positioning of people and supplies for the conduct of the hijacking of Flight 648.

Id. at ¶ 41.

Plaintiffs claim that Syrian sponsorship of ANO included, inter alia, "providing of training in Syrian sponsored ANO terrorist training camps, military and general intelligence, [and]

---

[7] Mr. Baker survived his injuries.  Id. at ¶ 73.

[8] Ms. Rogencamp did not survive her ordeal.  Id. at ¶ 75.  Ms. Pflug survived but continues to suffer from permanent and severe brain damage.  Id. at ¶ 77.

-5-

safe haven and free passage in and through Syrian controlled territory."  Id. at ¶ 46.

**B. Procedural History**

On March 25, 2003, Plaintiffs filed the instant action seeking recovery against all Defendants for battery, assault, false imprisonment, wrongful death, intentional infliction of emotional distress (including solatium), civil conspiracy and aiding and abetting.  See Compl. at ¶¶ 81-94, 98-103.  In addition, Plaintiffs asserted claims against all Defendants for survival damages; economic damages; and punitive damages.  See id. at ¶¶ 95-97, 104-109.

On May 12, 2004, the Libyan Defendants filed a Motion to Dismiss in which they contested the following: 1) personal jurisdiction over the individual Libyan Defendants; 2) the exercise of subject matter jurisdiction pursuant to 28 U.S.C. § 1605(a)(7) (providing an exception to foreign sovereign immunity in certain cases involving state-sponsored terrorism); and 3) the Court's authority to grant relief on Plaintiffs' claims.

On June 30, 2005, this Court issued a Memorandum Opinion rejecting the Libyan Defendants' jurisdictional arguments.  See Mem. Op. of June 30, 2005 at 11, 13 (holding that the individual Libyan Defendants could not avail themselves of the Fifth Amendment's protections, and that Plaintiffs' allegations were sufficient to bring Libya within the state-sponsored terrorism

-6-

exception to foreign sovereign immunity).  After determining that
the exercise of jurisdiction would be proper, the Court held that
Plaintiffs failed to state claims upon which it could grant relief.
Id. at 13-21.  Following the approach of the Court of Appeals in
Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024 (D.C.
Cir. 2004), the Court allowed Plaintiffs to amend their Complaint.
Mem. Op. of June 30, 2005 at 19.

        Plaintiffs filed their Amended Complaint on July 19, 2005.  On
July 29, 2005, the Libyan Defendants filed a Notice of
Interlocutory Appeal from this Court's Order.  On October 7, 2005,
the parties filed a Joint Motion to Hold the Appeal in Abeyance and
Remand with the United States Court of Appeals for the D.C.
Circuit.  The parties filed their Joint Motion because they
anticipated this Court might issue further rulings that the Libyan
Defendants could most efficiently address in a consolidated appeal.
The D.C. Circuit granted the Joint Motion on November 4, 2005.  On
December 19, 2005, Libyan Defendants filed the Motion to Dismiss
that is currently at issue.

## II. STANDARD OF REVIEW

        "[A] complaint should not be dismissed for failure to state a
claim unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claim which would entitle him to
relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("The issue is not

-7-

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). As noted earlier, the factual allegations of the complaint must ordinarily be presumed true and liberally construed in favor of the plaintiff. Abigail Alliance v. Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006).

## III. ANALYSIS

### A.    The D.C. Circuit Did Not Modify Notice Pleading Requirements Under the Federal Rules

In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002), the Supreme Court declared that federal courts lack authority to impose more stringent pleading requirements for particular claims than those imposed by the Federal Rules of Civil Procedure ("the Federal Rules"). Consequently, pleading requirements can only be modified by amending the Federal Rules; courts are powerless to do so through interpretation. Id.; See also Fed. R. Civ. P. 8 ("Rule 8") (permitting notice pleading in federal court).

In Acree v. Republic of Iraq, 370 F.3d 41, 58-59 (D.C. Cir. 2004), the Court of Appeals vacated a default judgment awarded against the Republic of Iraq ("Iraq"). The plaintiffs in Acree had brought suit against Iraq under the Flatow Amendment and FSIA's state-sponsored terrorism exception. Id. at 43. Iraq failed to respond, and the trial court granted summary judgment in favor of the plaintiffs. Id. The United States Government intervened on behalf of Iraq and appealed. Following its earlier decision in

-8-

<u>Cicippio-Puleo v. Islamic Republic of Iran</u>, 353 F.3d 1024 (D.C. Cir. 2004), the Court of Appeals held that the judgment had to be overturned because the Flatow Amendment and FSIA's terrorism exception did not create a cause of action against a foreign state. <u>Id.</u>

In vacating the district court's default judgment, the Court of Appeals ruled that before federal courts may award a judgment against a foreign state, plaintiffs must "identify a particular cause of action arising out of a specific source of law." <u>Id.</u> at 59.  Plaintiffs cannot ultimately prevail in a suit against a foreign sovereign by stating claims under "generic common law" or by merely alluding to traditional torts in their generic form.  <u>Id.</u>

The Libyan Defendants argue that the language quoted from <u>Acree</u> establishes more exacting pleading standards for FSIA claims and requires dismissal of the instant case for failure to state a claim. Defs.' Mot. to Dismiss at 3.  The Court disagrees with both assertions.

In <u>Acree</u>, the D.C. Circuit vacated the default judgment because the plaintiffs had no cause of action against a foreign state and therefore failed to establish any right to recovery. <u>See</u> <u>Acree</u>, 370 F.3d at 60 ("[W]e cannot ignore the magnitude of [plaintiffs'] default judgment or its impact ... where the law is indisputably clear that appellees were not legally entitled to this judgment."); <u>see also</u> 28 U.S.C. § 1608(e) (2006) (providing "no

-9-

judgment by default shall be entered ... against a foreign state
... unless the claimant establishes his claim or right to relief by
evidence satisfactory to the court."). Although the D.C. Circuit
noted the inadequacy of the plaintiffs' "allu[sion]" to traditional
torts in their complaint, it did not, and could not under
Swierkiewicz, impose a heightened pleading requirement in FSIA
cases. See Acree, 370 F.3d at 59. The Court of Appeals simply
overturned a default judgment against a foreign state because the
plaintiffs failed to establish their basic entitlement to relief.
See Acree, 370 F.3d at 59 (noting the plaintiffs' failure to
advance cognizable claims at oral argument). Given the Supreme
Court's decision in Swierkiewicz, the Court of Appeals could not
have required more detailed complaints in FSIA cases than Rule 8
otherwise permits.

Nor did the D.C. Circuit's ruling in Cicippio-Puleo modify
pleading requirements in FSIA cases. In that case the Court of
Appeals affirmed dismissal of claims against the Islamic Republic
of Iran. Cicippio-Puelo, 353 F.3d at 1036. The trial court had
dismissed the plaintiffs' claims, in part, because their complaint
failed to state a cause of action upon which it could grant
relief.[9] Cicippio-Puleo v. Islamic Republic of Iran, No. 01-1496,
2002 U.S. Dist. LEXIS 27050, at *4 (D.D.C. June 21, 2002). As in

---

[9] The trial court also ruled that it lacked subject matter
jurisdiction over the plaintiffs' claims, but the D.C. Circuit
rejected that conclusion. Cicippio-Puleo, 353 F.3d at 1030.

<u>Acree</u>, the trial and appellate courts addressed whether the plaintiffs' complaint, in and of itself, was sufficient to support entry of a default judgment against a foreign state. <u>See</u> <u>Cicippio-Puleo</u>, 353 F.3d at 1027.

Neither <u>Acree</u> nor <u>Cicippio-Puelo</u> imposed a heightened pleading requirement nor altered Plaintiffs' pleading burden. To survive Defendants' Motion to Dismiss under Rule 12(b)(6), at this early stage of litigation, Plaintiffs' Amended Complaint need only provide Defendants "fair notice of each claim and its basis."[10] <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1118 (D.C. Cir. 2000)(internal quotation and citation omitted). Plaintiff's Amended Complaint provides such "fair notice."

---

[10] In <u>Dammarell v. Islamic Republic of Iran</u>, 370 F. Supp. 2d 218, 223 (D.D.C. 2005), the court concluded that plaintiffs must identify in their complaint the specific source of law for their FSIA claims, although not their choice of law determinations. The court noted that FSIA claims could conceptually arise under "state common law, state statutory law, the federal common law, international law, and numerous federal statutes." <u>Id.</u> at 223 n.3.

When claims are based on domestic law, federal courts have routinely rejected contentions that notice pleading requires complaints to apprise defendants of legal theories by which plaintiffs might proceed. <u>See</u>, <u>e.g.</u>, <u>Hanson v. Hoffman</u>, 628 F.2d 42, 53 (D.C. Cir. 1980) ("The liberal concepts of notice pleading embodied in the Federal Rules do not require the pleading of legal theories.").

Plaintiffs relying on foreign law must notify defendants, but they may do so "by pleading <u>or other reasonable written notice</u>." Fed. R. Civ. P. 44.1 ("Rule 44.1") (emphasis added). In light of Rule 44.1 and <u>Hanson</u>, the Court concludes that the Amended Complaint is adequate.

**B.   Plaintiffs Do Not Need to Cite Authority or Set Forth Choice-of-Law Theories in Their Complaint**

The Libyan Defendants reiterate their argument that Plaintiffs must identify which states' laws apply.  Defs.' Reply at 5-6. Plaintiffs have no such obligation as the Court is "unaware of any law, either in the FSIA setting or out, that would require such a result."  <u>Dammarell</u>, 370 F. Supp. 2d at 221.  Nor have Defendants cited any.

The Libyan Defendants complain that they are "left to guess the causes of action which may be available to [P]laintiffs" if the Court does not require Plaintiffs to declare which states' laws apply.  Defs.' Reply at 5-6.  To illustrate, the Libyan Defendants point out that the choice-of-law designation will determine whether Plaintiffs may bring claims for intentional infliction of emotional distress because some states do not recognize such a cause of action.  <u>See id.</u>  The Libyan Defendants remain free, however, to flesh out Plaintiffs' claims through available discovery mechanisms and file summary judgment motions to test the viability of those claims.  <u>See</u> Fed. R. Civ. P. 56; <u>Swierkiewicz</u>, 534 U.S. at 515.

Neither the Federal Rules nor case law require Plaintiffs to plead legal theories in their complaint.  <u>Hanson</u>, 628 F.2d at 53; <u>see also</u> <u>Bodoff v. Islamic Republic of Iran</u>, 424 F. Supp. 2d 74, 78 (D.D.C. 2006) ("Courts have not construed the pleading requirements of Federal Rule of Civil Procedure 8 to require a plaintiff to recite specific source(s) of law in a complaint."); <u>Hartford Ins.</u>

-12-

Co. v. The Socialist People's Libyan Arab Jamahiriya, 422 F. Supp. 2d 203, 209 (D.D.C. 2006) ("...Acree does not increase what is required of Plaintiffs by notice pleading, nor does it raise the bar for surviving a motion to dismiss for failure to state a claim.").

## C.  Defendants Do Not Argue that Plaintiffs Cannot Conceivably Prove Facts That Would Entitle Them to Relief

At this stage of the litigation, the Court may only grant the Libyan Defendants' Motion to Dismiss if the facts alleged in Plaintiffs' Amended Complaint could not warrant relief under any applicable law.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Except as discussed in section III.D. below, the Libyan Defendants do not argue that Plaintiffs are unable to recover under any applicable law.  Instead, they insist that the Amended Complaint must specify the sources of law on which Plaintiffs intend to rely. The Libyan Defendants' argument relates to fair notice, not legal impossibility.

In more than one hundred paragraphs, Plaintiffs provide sufficient information to preclude determination, at this early stage of litigation, that they "can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." Id.  Because the Libyan Defendants fail to advance arguments or cite any authority demonstrating Plaintiffs' inability to obtain relief, their Motion to Dismiss must be denied.

The Amended Complaint gives the Defendants fair notice of the basis of Plaintiffs' claims.   Swierkiewicz, 534 U.S. at 514. Plaintiffs' Amended Complaint asserts claims for the following: 1) battery (under state common law); 2) assault (under state common law); 3) false imprisonment (under state common law); 4) intentional infliction of emotional distress, including solatium (under the Flatow Amendment and state common law); 5) wrongful death (under state common law and state statutory law); 6) survival damages (under state common law and state statutory law); 7) civil conspiracy (under state common law); 8) aiding and abetting (under state common law and state statutory law); 9) economic damages (under state common law and state statutory law); and 10) punitive damages (under the Flatow Amendment and state common law).

The Amended Complaint describes and alleges connections between the Libyan Defendants and ANO.  Pls.' Am. Compl. at ¶ 41. The pleading also alleges, in some detail, ANO terrorists' actions before and during the EgyptAir hijacking.  Plaintiffs list parties to the action and describe the parties' relationships with one another.  Id. at ¶¶ 6-39.  Finally, the Amended Complaint states which causes of action Plaintiffs intend to pursue and notes the sources of law under which they intend to proceed (albeit in less detail than Defendants might prefer).   Plaintiffs' Amended Complaint provides sufficient notice of the basis of Plaintiffs'

-14-

claims.  See Swierkiewicz, 534 U.S. at 514; Sparrow, 216 F.3d at 1118.

### D.  No Plaintiffs Will Be Dismissed from This Case for Failure to Allege a Valid Cause of Action

In their Motion to Dismiss Plaintiffs' original Complaint, the Libyan Defendants argued that particular Plaintiffs should be dismissed from this case for failure to allege a valid cause of action.[11]  In their Motion to Dismiss Plaintiffs' Amended Complaint, the Libyan Defendants rely principally on their argument that Plaintiffs' pleadings should designate which states' laws apply. See Defs.' Reply at 5-6.  The Court rejects both arguments.

---

[11]  Specifically, in their Motion to Dismiss Plaintiffs' previous Complaint, the Libyan Defendants claimed that Valerie Peterson, as Executor of the Estate of Vernon W. Peterson, the father of EgyptAir Flight 648 passenger Scarlett M. Rogencamp, should be dismissed because "[i]t is unclear to [Defendants] how an estate of a deceased father can assert a cause of action for infliction of emotional distress and loss of solatium."  Defs.' Mot. at 16.  They also claimed that the Court should dismiss Scott Pflug, the ex-husband of EgyptAir Flight 648 passenger Jackie Nink Pflug, from this case because "an ex husband ... may not bring suit against [Defendants] for emotional distress or the loss of solatium as he is no longer married to her and there is no further legal obligation between the individuals."  Id.  In addition, they claimed that Jim Olsen, who married EgyptAir Flight 648 passenger Jackie Nink Pflug twelve years after the EgyptAir Flight 648 hijacking, and Jim Olsen, as Friend and Next of Kin of Tanner Olsen, Jackie Nink Pflug's son who was born twelve years after the hijacking, should be dismissed.  They argued that "[t]he assertion of a cause of action on behalf of a husband who married plaintiff Jackie Nink Pflung 12 years after the alleged incident, or a son born over 12 years after the incident for emotional distress and the loss of solatium has no basis under any relevant [] statutes." Id.

-15-

As discussed above, the Libyan Defendants have not met their burden of showing Plaintiffs' inability to recover under any applicable law. <u>In re Swine Flu Immunization Products Liability Litigation</u>, 880 F.2d 1439, 1442 (D.C. Cir. 1999) ("The standard is quite strict under Rule 12(b)(6) ... a defendant must show 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957))). The Libyan Defendants' mere assertion that Plaintiffs' claims have no basis in law does not satisfy the exacting standard for dismissal at this early stage of the litigation.

The Court rejects the Libyan Defendants' assertion that Plaintiffs must designate applicable law for the same reasons noted in sections III.A, III.B, and III.C. above. Therefore, the Libyan Defendants' Motion to Dismiss claims by these particular Plaintiffs is denied.

**III. CONCLUSION**

Accordingly, for the foregoing reasons, the Libyan Defendants' Motion to Dismiss the Amended Complaint is **denied**.

An Order will issue with this Memorandum Opinion.

Nov. 7, 2006

GLADYS KESSLER
United States District Judge

-16-