UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Patrick Scott Baker, *et al*., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 03-cv-0749 (JMF) |
| | : | |
| Socialist People's Libyan Arab Jamahirya, *et al*. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM ORDER**

This action arises out of a judgment awarding compensatory and punitive damages to plaintiffs and against the named Syrian defendants for acts of state-sponsored terrorism resulting in the hijacking of EgyptAir Flight 648 on November 23, 1985, while the aircraft was bound for Cairo, Egypt from Athens, Greece. The hijacking resulted in the execution-style shooting of three Americans: Patrick Scott Baker, Jackie Nink Pflug, and Scarlett Marie Rogenkamp. Baker and Pflug, survivors of the attack, brought suit together with their family members and the family members of Rogenkamp, who was killed in the attack, against the Libyan and Syrian governments[1] as state sponsors of terrorism under 28 U.S.C. § 1605(a)(7) of the Foreign Sovereign Immunities Act (FSIA).[2]

---

[1] The named Syrian defendants are: the Syrian Arab Republic; the Syrian Air Force Intelligence agency (Idarat al-Mukhabarat al-Jawiyya); and Syria's Director of Military Intelligence (General Muhammad al-Khuli) (hereinafter the "Syrian defendants" or "Syria"). In my findings of fact and conclusions of law in this case, I determined that the government of Syria was the only defendant against whom charges could be brought, because each of the Syrian defendants would be treated as the state itself under the "core functions" test. Baker v. Socialist People's Libyan Arab Jamahirya, 775 F. Supp. 2d 48, 2011 WL 1237925, at *19 (D.D.C. 2011) (reporter page numbers not yet available).

[2] All references to the United States Code are to the electronic versions that appear in Westlaw and Lexis.

On March 30, 2011, I issued my findings of fact and conclusions of law in the instant case, and ordered judgment be entered against the Syrian defendants. Baker, 775 F. Supp. 2d 48. On April 14, 2011, Syria filed a notice of appeal. Notice of Appeal [doc. #128]. I have three motions before me at this time: Syria's Application for a Stay Pending Appeal [doc. #131] (the document is visible at doc. #128, but the motion is filed at doc. #131); plaintiffs' Motion to Require the Posting of a Supersedeas Bond Pursuant to Fed. R. Civ. P. 62(d) [doc. #133] (joined with plaintiffs' opposition to doc. #131); and Plaintiffs' Motion for Order Under 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment and Memorandum in Support Thereof [doc. #134] (including a request that the court vacate that portion of its March 31, 2011 Order requiring Plaintiffs to translate and serve the final judgment under 28 U.S.C. § 1608(e)).

**I.   BACKGROUND**

The original complaint was filed on March 25, 2003. Complaint [doc. #1]. Service of process was perfected on June 28, 2003, pursuant to 28 U.S.C. § 1608(a)(3). Certificate [doc. #9]. The Syrian defendants neither answered nor appeared and default was entered against them on October 16, 2003. Minute Entry, Oct. 16, 2003. The Order for Entry of Default required the plaintiffs to translate the Entry of Default into Arabic and serve it on the Syrian defendants as required by 28 U.S.C. § 1608(e). Id. The Syrian defendants did not respond to the entry of default.

In 2008, the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110–181, § 1083, 122 Stat. 3, 338–344 revised the FSIA framework under which state-sponsored terrorism cases may be brought by substituting 28 U.S.C. § 1605A in place of 28 U.S.C. § 1605(a)(7). On February 29, 2008, the court granted plaintiffs leave to amend the original complaint, in order to restate subject matter jurisdiction under § 1605A; the court further ordered

that, in accordance with the enactment of § 1605A, no separate service was necessary, as no new claims were asserted. Order [doc. #65].

On November 2008, the Libyan defendants were dismissed from the action pursuant to the enactment of the Libya Claims Resolution Act, Pub.L. No. 110–301, 122 Stat. 2999 (2008). Order [doc. #101].  The Order dismissed the complaint "in its entirety with prejudice." Id.  On the same day, Judge Kessler issued an order requiring plaintiffs to submit a revised order by December 3, 2008, identifying the remaining claims. Order [doc. #102] at 2.  On December 24, 2008, Judge Kessler issued an order dismissing the complaint with prejudice only against the Libyan defendants and explicitly noting that "[p]laintiffs' claims asserted . . . against the [Syrian defendants] remain pending and active before this Court and are not affected by entry of this Order." Order [doc. #105] at 2.

On October 8, 2009, Judge Kessler referred the case, with consent of counsel, to me, as Magistrate Judge, for all purposes. Order [doc. #110].  Copies of the Order were sent to all counsel of record. Id.  The court held an evidentiary hearing on May 3-7, 2010.  Pursuant to that evidentiary hearing, the court entered default judgment against the Syrian defendants on March 31, 2011. Baker, 775 F.Supp.2d 48.  Having heard and reviewed the evidence, the court determined:

> (i) that the hijacking of EgyptAir Flight 648 on November 23, 1985 (the "EgyptAir hijacking") was an act of international terrorism;
> (ii) that the terrorist shootings of the American victims of the EgyptAir hijacking—Patrick Baker, Jackie Pflug, and Scarlett Rogenkamp—were acts of international terrorism that occurred during and as a result of the November 23, 1985 terrorist hijacking;
> (iii) that said hijacking was committed by terrorist operatives of the Abu Nidal Organization ("ANO"), which has been designated by the U.S. Department of State as a Foreign Terrorist Organization;
> (iv) that the ANO, at the time of and prior to the EgyptAir hijacking, was sponsored and supported by Syria, which has been

> designated by the U.S. Department of State as a State Sponsor of
> Terrorism; (v) that the Syrian Arab Republic, the Syrian Air Force
> Intelligence agency, Idarat al-Mukhabarat al-Jawiyya, and Syria's
> Director of Military Intelligence, General Muhammad al-Khuli,
> conspired with and provided substantial and material support to the
> ANO terrorist organization; and (vi) that the Syrian defendants
> caused and are liable for the acts of international terrorism against
> the plaintiffs, for which the Court will award damages.

Id. at 48.

In response to that default judgment, the Syrian defendants appeared for the first time to file notice of appeal and moved to stay enforcement of the judgment pending appeal. [doc. #131] They cited a number of grounds for their appeal that they also argue support granting a stay, including lack of subject matter and personal jurisdiction, insufficient service of process, failure to provide service of process for the amended complaint, absence of consent to final judgment by a Magistrate Judge, and a number of constitutional challenges to the FSIA statute. Id.

Plaintiffs filed a subsequent motion seeking an Order authorizing enforcement of the judgment pursuant to 28 U.S.C. § 1610(c). Motion for Order [doc. # 134]. Plaintiffs also ask the court to vacate its Order requiring the plaintiffs to arrange for the judgment and Order to be translated into Arabic and served on the defendants through diplomatic channels, Order [doc. #126 at 3-4], because the Syrian defendants have since filed an appearance and notice of appeal, and thus already have notice of the judgment. [doc. # 134 at 1].

## II.     DEFENDANT'S MOTION TO STAY PENDING APPEAL OF DEFAULT JUDGMENT

At no point prior to final judgment did the defendants appear or otherwise indicate an intent to defend the suit. This case therefore presents the problem of a "totally unresponsive party" that "default judgments were designed to handle." Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980). In such cases, default judgment is intended to protect the diligent party "lest he

4

be faced with interminable delay and continued uncertainty as to his rights." H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970). The default judgment further serves as a deterrent to parties "who choose delay as part of their litigative strategy." Id.

In the present case, the Syrian defendants, and the counsel representing them, have chosen default as their litigation strategy. This is not the first time Syria has done this. Syria has defaulted in several recent and currently pending cases before this court.[3] In fact, in reviewing the pending and recent proceedings against Syria on the court docket, the court is unable to identify a case where Syria has filed a timely response to a complaint despite receiving proper service of process.

The court of appeals recently reviewed an appeal by defendants from a denial of relief from default judgment in which Syria raised many of the same arguments raised here. Gates v.

---

[3] Syria has recently defaulted in the following cases before this court:

- Gates v. Syrian Arab Republic, 646 F. Supp. 2d. 79, 91 (D.D.C. 2009) (finding that Syria failed to meet its burden of proving relief from default judgment), aff'd, 646 F.3d 1 (D.C. Cir. 2011) (finding that Syria was not entitled to relief from default judgment).

- *Entry of Default*, Shatsky v. Syrian Arab Republic, No. 08-CIV-496 (D.D.C. Mar. 22, 2010).

- *Entry of Default*, Estate of John Buonocore v. Great Socialist People's Libyan Arab Jamahiraya, No. 06-CIV-727 (D.D.C. Oct. 4, 2006).

- *Entry of Default*, Certain Underwriters at Lloyds of London v. Great Socialist People's Libyan Arab Jamahiraya, No. 06-CIV-731 (D.D.C. Oct. 4, 2006).

- *Entry of Default*, (doc. #105), Wultz v. Islamic Republic of Iran,, 08-CIV-1460 (D.D.C. Feb. 10, 2011).

Syrian Arab Republic, 646 F.3d 1 (D.C. Cir. 2011).[4]  The court of appeals found none of the arguments to have merit.  Syria raises two issues here that were not directly resolved by Gates: 1) whether a Magistrate Judge has authority to enter final judgment in the absence of a party's explicit consent, where that party has defaulted despite receiving proper service of process and has failed to appear to contest referral of the case to the magistrate judge prior to entry of final judgment, and 2) whether the dismissal of the Libyan defendants from this suit pursuant to the Libyan Claims Settlement Act renders the Syrian co-defendants in that suit immune from liability under FSIA.

     **A.**     **Standard for Granting a Stay of Enforcement Pending an Appeal**

A stay pending appeal is an extraordinary remedy. Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985).  It is "an intrusion into the ordinary process of . . . judicial review and accordingly is not a matter of right." Nken v. Holder, 129 S. Ct. 1749, 1757 (2009) (internal quotation marks omitted).  Instead, a stay is an exercise of judicial discretion, and whether to grant it depends upon the specific circumstances of the case. Id. at 1760.  The

---

[4] Gates resolved the following issues raised by the Syrian defendants in their motion to stay enforcement:

- Service of process on the Syrian defendants pursuant to 28 U.S.C. § 1608(a)(3) satisfies the requirements of § 1608. Gates, 2011 WL 1900876, at *4 (reporter page numbering not yet available).

- The amended complaint changing the applicable FSIA provision from § 1605(a)(7) to § 1605A does not require new service of process, because it is a motion and not a pleading containing a new claim for relief. Id. at *5.

- FSIA does not conflict with Article 2 of the United Nations Charter, international laws, or international norms; claims under FSIA do not constitute non-justiciable political questions; and the challenge to the constitutionality of FSIA based on the premise that future acts of Congress or the President may impair final judgment is not ripe. Id. at *3.

moving party bears the burden of justifying why the court should grant this extraordinary remedy. Id. at 1761. The court considers four factors in reviewing the motion:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Id.

These factors are typically evaluated on a sliding scale, and a strong showing of one factor may excuse a relatively weaker showing on another. Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009). However, the first two factors are the most critical. Nken, 129 S. Ct. at 1761. The moving party must make a strong showing on at least one of these two factors and some showing on the other. See Cuomo, 772 F.2d at 974 ("A stay may be granted with either a high probability of success and some injury, or *vice versa.*"). Furthermore, the court of appeals has found that the failure to make any showing of irreparable harm is grounds for refusing to grant a stay, even if the other three factors merit relief. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006); see also Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir. 1985) ("We believe that analysis of the second factor disposes of these motions and, therefore, address only whether the petitioners have demonstrated that in the absence of a stay, they will suffer irreparable harm"). Because the second factor is potentially dispositive, the court will first discuss this factor prior to exploring the remaining three.

    **B.**    **Likelihood of Irreparable Injury to the Applicant if Stay is Denied**

The Syrian defendants do not allege that enforcement will cause them irreparable harm, nor would such an assertion have merit. It is well-settled that economic loss does not, in itself,

7

constitute irreparable harm. Id. at 675. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." Id.  For an injury to be "irreparable," legal remedies after the fact must be inadequate to restore the party seeking a stay to the status quo ante. FTC v. Church & Dwight Co., 756 F. Supp. 2d 81, 86 (D.D.C. 2009). Here, enforcement of the judgment concerns only the payment of money damages. The lack of irreparable harm is even more apparent in this case because the defendant is a sovereign nation.[5] The fact that the Syrian defendants have made no showing of irreparable harm may dispose of their motion altogether. Wisconsin Gas Co., 758 F.2d at 674.  The court will nonetheless err on the side of inclusion and address the remaining three factors.

### C.    Likelihood of Success on the Merits

The next critical factor is the likelihood that the stay applicant will be successful on appeal. Nken, 129 S. Ct. at 176.  To satisfy this factor, the moving party must show more than a mere possibility of success on appeal. Id.  On the other hand, this factor does not require a showing of success with absolute certainty. Population Institute v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986).  "It will ordinarily be enough that the plaintiff has raised serious legal questions going to the merits, so serious, substantial, and difficult as to make them a fair ground of litigation and thus for more deliberative investigation." Id. (citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir.1977)).

---

[5] Syria's estimated gross domestic product based on purchasing power parity for 2011 is $111.822 billion. International Monetary Fund, World Economic Outlook Database (July 29, 2011), http://www.imf.org/external/pubs/ft/weo/2011/01/weodata/weorept.aspx?sy=2011&ey=2011&sort=country&ds=.&br=1&c=463&s=PPPGDP&grp=0&a=&pr1.x=59&pr1.y=12 (last visited Sept. 1, 2011).

1.  *Referral to Magistrate Judge Without the Express Consent of a Willfully Defaulting Party*

The Federal Magistrate Act of 1979 ("the Act") expanded the power of magistrate judges to include presiding over "any or all proceedings in a jury or nonjury civil matter and order[ing] the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1).  The Act therefore gave magistrate judges "full authority over dispositive motions, conduct of trial, and entry of final judgment . . . to be treated as a final judgment of the district court." Roell v. Withrow, 538 U.S. 580, 585 (2003).  However, to preserve the litigant's right to be heard by an Article III judge, the Act requires that magistrate judges only exercise such powers when acting "upon the consent of the parties." Id.

Congress's purpose behind the Act was to "relieve the 'district court's mounting queue of cases' and thereby improve 'access to the courts for all groups.'" Id. at 588.  At the same time, Congress sought to preserve the right of litigants to insist that their case be heard before an Article III judge, who is appointed for a life term and "free from potential domination by other branches of government." Id. at 588-89.  For this reason, Congress required that the parties voluntarily consent before a civil action is referred to a magistrate judge for final judgment. Id. at 589.

In Roell, the Court weighed these two objectives in the context of a party's lack of express consent, and held that consent may be implied where the party had appeared and argued before the magistrate judge, and withheld any objection to jurisdiction until after the entry of final judgment. Id. at 588.  The Court was particularly concerned about "the risk of a full and complicated trial wasted at the option of an undeserving and possibly opportunistic litigant." Id. at 590.  The Court found that requiring express consent would in effect allow parties to "sit back

without a word . . . with a right to vacate any judgment that turned out not to their liking." Id. The Court therefore concluded that implied consent was necessary to check "the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority." Id. An express consent rule, the Court reasoned, would "frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts." Id. at 590-91 (citing United States v. Raddatz, 447 U.S. 667, 676, n.3 (1980)).

      The factor distinguishing this case from that in Roell is that here the Syrian defendants were in default, having never appeared before the court. The defendants were, however, on notice regarding the proceedings. They received proper service of process both as to the initial complaint as well as to the entry of default for their failure to appear or otherwise defend. At no point in the eighteen months between referral of this case and entry of final judgment did the Syrian defendants appear to voice their absence of consent or insist on a trial before a district court judge. Instead, the Syrian defendants have chosen to "sit back and wait," seeking to vacate the judgment after eight years of litigation and a full evidentiary hearing because the judgment "was not to their liking." Such a strategy is the gamesmanship that the Supreme Court condemned in Roell.

      The court of appeals has not yet ruled on the application of Roell to the circumstances of this case, where a party has defaulted despite receiving proper notice and has failed to contest referral to a magistrate judge prior to entry of final judgment. The Eighth Circuit has considered the question of whether default amounts to a waiver of a party's right to contest referral to a magistrate judge, and held that it does not. Henry v. Tri-Services, Inc., 33 F.3d 931, 933 (8th Cir. 1994). However, aside from predating the Supreme Court's reasoning and interpretation of the Federal Magistrate Act in Roell, Henry differs from this case because in that case the party who

did not consent did not receive proper service of process, and further claimed to have received no actual notice of the proceeding against it prior to the entry of default judgment. Id. at 932. Here, as noted above, the Syrian defendants received proper service of process and willfully defaulted. Indeed, Syria has repeatedly chosen to default in cases before this court, despite receiving proper service of process. As noted in footnote 2, supra, Syria has defaulted in at least five recent cases before this court. It seems to be its strategy to default, await the outcome, and, if not to its liking, appeal on a ground not asserted below. In Roell, lack of express consent did not, in itself, defeat the power of the magistrate judge to enter final judgment, if there was implied consent. An objection to the magistrate judge's jurisdiction made after the entry of final judgment came too late. *A fortiori*, defaulting nullifies any right to argue the absence of the magistrate judge's jurisdiction for the first time on appeal.

*2. Claim Dismissed Pursuant to Libyan Claims Settlement Act*

On August 4, 2008, the President signed into law the Libyan Claims Resolution Act, which had as its purpose to provide "fair compensation to all nationals of the United States who have terrorism-related claims against Libya through a comprehensive settlement . . . pursuant to an international agreement between the United States and Libya." Pub. L. No. 110-301 (2008) at § 3. On August 24, 2008, the United States and Libya entered into the Claims Settlement Agreement with the objective to 1) reach a final settlement of the parties' claims and those of their nationals, 2) permanently terminate all pending suits, and 3) preclude any further suits that may be taken in the parties' courts. See Claims Settlement Agreement, Art. 1. On October 31, 2008, the President issued an Executive Order stating that all claims within the terms of Article I of the Claims Settlement Agreement are settled, Exec. Order No. 13,477(2008), and that "any pending suit in any court, domestic or foreign, by United States nationals (including any suit with

a judgment that is still subject to appeal or other forms of direct judicial review) coming within the terms of Article I shall be terminated." Id. at § 1 (a)(ii).

The settlement agreement between the United States and Libya does not deprive this court of jurisdiction over the claims by plaintiffs against the Syrian defendants. In another civil case against Syria before this court, the Department of Justice has expressly stated on behalf of the United States Government that "[d]ismissal of the claims against the Syrian defendants is not mandated by the plain language or purposes behind the Act, the Claims Settlement Agreement, and the Executive Order." *Statement of Interest of the United States* at 19, Certain Underwriters at Lloyds, London v. Socialist People's Libyan Arab Jamahiriya, No. 06-CIV-0731 (D.D.C. Mar. 16, 2009). Instead, the United States maintains the position that "plain language of the Act . . . contemplates the dismissal of claims against the Libyan defendants, rather than the dismissal of entire cases in which plaintiffs have sued non-Libyan defendants along with Libyan defendants." Id. at 20. Syria is not a party to the bilateral agreement between the United States and Libya, nor was the Agreement intended to apply to claims by United States nationals against states other than Libya. The argument that the Agreement deprives this court of jurisdiction over the plaintiffs' claims against the Syrian defendants is without merit.

> **D.    Whether the Issuance of a Stay Will Substantially Injure Other Interested Parties, and Where the Public Interest Lies**

The final two factors for considering a stay are whether the issuance of a stay will substantially injure other interested parties to the suit, and whether public policy favors a stay. Because the court has found that Syria has shown neither a likelihood of success on the merits nor a probability of irreparable harm, the defendants have failed to meet their burden in justifying why the court should grant a stay. Cuomo, 772 F.2d at 974. The remaining factors, even if

meritorious, would fail to sway the balance in the defendants' favor.

With regard to the third factor, plaintiffs argue that a stay would cause them substantial harm, because they have waited 25 years to be compensated for the death of Rogenkamp and the permanent injuries to Pflug and Baker as a result of the terrorist attack that Syria sponsored. Plaintiffs' Opposition to Defendants' Motion for Stay of Judgment Pending Appeal [doc. #132] at 5.  The Syrian defendants did not file a reply to the plaintiffs' memorandum, nor did their motion offer any countervailing arguments.  Syria has failed to convince the court of any justification to delay plaintiffs' recovery for their injuries.

The Syrian defendants did not put forth arguments with respect to the public interest.  In fact, the public interest weighs against granting a stay in this case.  By enacting § 1605(A), Congress has clearly communicated its intent that state sponsors of terrorism should be held liable for the deaths and injuries of U.S. citizens caused by the terrorist attacks that those states have sponsored.  There is no dispute that plaintiffs here are the class of victims for whom Congress intended to create a cause of action, and they have met their burden in showing that Syria is liable under the statute as a state sponsor of terrorism.  Public policy does not weigh in favor of delaying recovery for victims of terrorist attacks to the benefit of states who sponsor such attacks.[6]

---

[6] Syria has not provided any reasons for imposing a stay pending appeal without a bond. Furthermore, as this court has previously noted, "there is a reasonable likelihood of Syria's unwillingness to satisfy the judgment in full upon ultimate disposition of the case." *Order* at 2-3, Gates v. Syrian Arab Republic, No. 06-CIV-1500 (D.D.C. Oct. 21, 2009).  Accordingly, if this court were to find that a stay were appropriate under these circumstances, it would only be granted on the condition that Syria post a supersedeas bond.

### III. PLAINTIFF'S MOTION TO VACATE ORDER REQUIRING SERVICE OF JUDGMENT ON DEFENDANTS AND SEEKING AUTHORIZATION OF ENFORCEMENT OF JUDGMENT UNDER 28 U.S.C. § 1610(c)

Under 28 U.S.C. § 1610(a)(7), the property in the United States of a foreign state that is used for commercial activity is not immune from attachment in aid of execution, or from execution, upon a judgment that "relates to a claim for which the foreign state is not immune under section 1605A, regardless of whether the property is or was involved with the act upon which the judgment is based." 28 U.S.C. § 1610(a)(7).  However, the plaintiffs may not attach such property or execute a judgment "until the court has ordered such attachment and execution, after having determined that a reasonable time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." 28 U.S.C. § 1610(c).

As Chief Judge Lamberth has noted, FSIA sets forth a number of procedural hurdles on parties bringing suit against foreign states. Murphy v. Islamic Republic of Iran, 06-CIV-596, --- F. Supp. 2d ----, 2011 WL 1517985, at *1 (D.D.C. Apr. 21, 2011).  These hurdles are intended to prevent damage to interests of other states or the United States by hasty decisions or by the failure to give foreign parties adequate notice or opportunity to respond. Id.  The purpose of § 1610(c) is "to ensure that a foreign power is always given an opportunity to evaluate and respond to any court judgment entered against it which could subject its property and interests in the United States to attachment or execution." Agudas Chasidel Chabad of the United States v. Russian Fed'n, 05-CIV-1548, --- F. Supp. 2d ----, 2011 WL 3087029, at *8 (D.D.C. July 26, 2011).

Accordingly, the court ordered the plaintiffs to provide notice of its final judgment of March 31, 2011, to the Syrian defendants. Order of Mar. 31, 2011 [doc. #126].  However, on April 14, 2011, before such service could be made, the defendants noted an appearance, filed a

notice of appeal, and filed a motion to stay enforcement pending appeal.  See [doc. #128], [doc. #131], Notice of Attorney's Limited Appearance [doc. #129].  Through these appearances, the Syrian defendants demonstrated that they already had notice of the final judgment and that no further notice was necessary.  Yet the Syrian defendants have objected to the plaintiffs' request to vacate the Order, insisting that plaintiffs translate and serve the final judgment under 28 U.S.C. § 1608(e). Syria's Memorandum in Opposition to Plaintiffs' Motion for Order Under 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment [doc. #135] at 5.  As grounds for this objection, the Syrian defendants argue that plaintiffs' translation is needed to "eliminate potential controversy as to the accuracy and adequacy of the translations."  However, the court is not convinced that a translation of the final judgment financed by the plaintiffs will be more accurate than one financed by the defendants, who are represented by American counsel.  The purpose of the objection more likely seems to be "to cause expense and delay, both of which are contrary to the interest of justice and judicial economy." Plaintiff's Reply to Defendant's Opposition to Plaintiffs' Motion for an Order Under 28 U.S.C. § 1610(c) [doc. #136] at 6.

     Because no further notice of the final judgment was required after the defendants filed an appearance in the case and noted their appeal, the court now turns to whether reasonable time has elapsed since the entry of judgment as required by § 1610(c), and concludes that this requirement is met.  More than 90 days have passed since the judgment was entered and the defendants noted their appearance.  This court has repeatedly found that a period of a few months satisfies the time requirement of § 1610(c). See, e.g., Ned Chartering & Trading, Inc. v. Republic of Pak., 130 F. Supp. 2d. 64, 67 (D.D.C. 2001) (finding that six weeks was sufficient time given the facts of the case and noting that other courts have found two or three months sufficient).

Defendants note that plaintiffs' motion for enforcement does not contain a description of the property on which execution is sought. [doc. #135] at 5. Such a description is not required. A § 1610(c) order in this case serves only to determine (1) that a reasonable period of time has elapsed following entry of judgment, and (2) that any notice required under § 1608(e) has been given. Execution of the judgment with respect to any particular property requires a separate judicial determination that the property at issue falls within one of the exceptions to immunity. Agudas Chasidel Chabad of the United States, 2011 WL 3087029, at *8.

## IV.   CONCLUSION

For the foregoing reasons, it is, hereby,

**ORDERED** that Syria's Application for a Stay Pending Appeal [doc. #131] is **DENIED**. It is further, hereby,

**ORDERED** that plaintiffs' Motion to Require the Posting of a Supersedeas Bond Pursuant to Fed. R. Civ. P. 62(d) [doc. #133] is **DENIED AS MOOT**. It is further, hereby,

**ORDERED** that Plaintiffs' Motion for Order Under 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment and Memorandum in Support Thereof [doc. #134] is **GRANTED**. Finally, it is, hereby,

**ORDERED** that my Order of March 31, 2011, is **VACATED IN PART**, to the extent that it requires plaintiffs to arrange for the Judgment and Order to be translated into Arabic and served upon defendants under 28 U.S.C. § 1608(e)

**SO ORDERED.**

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE